[S. F. No. 2846.    Department One.—February 21, 1902.]

# LULU O'CONNOR, by her Guardian ad Litem, Respondent, v. GOLDEN GATE WOOLEN MANUFACTURING COMPANY, Appellant.

Negligence—Failure of Foreman to Warn Minor of Dangerous Work—Starting of Machine by Fellow-Servant—Proximate Cause of Injury.—Where a young girl employed in a woolen factory, to whom the foreman assigned the duty of sweeping in the front and rear of a machine, which was sometimes in motion when the sweeping was done, without warning her of danger from cog-wheels, the nature and danger of which she did not understand, the act of a fellow-servant, in starting the machinery in motion, without fault, while the young girl was sweeping behind it, cannot be considered the proximate cause of the injury arising from the catching of her dress in the cog-wheels.

Id.—Duty of Master to Warn Young and Inexperienced Servant.—Where the master employs a servant to do dangerous work, or to work in a dangerous place, who, from youth, inexperience, ignorance, or want of general capacity, may fail to appreciate the danger, it is a breach of duty for the master to expose such a servant, even with his own consent, to such danger, without first giving him such instructions or cautions as will enable him to comprehend them and do the work safely, with proper care on the servant's part.

Id.—Negligence·of Child a Question of Fact for Jury.—The negligence of a minor child must, in the nature of the case, be a question of fact for the jury, rather than of law for the court; and it is their province to determine whether or not the child duly exercised such judgment as he possessed, taking into consideration his years, experience, and ability.  The ordinary care which a child of limited judgment and experience is called upon to exercise in a given act is not the same *quantum* of care which an adult would be called upon to use under the same circumstances.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   John Hunt, Judge.

The facts are stated in the opinion.

J. E. Foulds, and Frank Shay, for Appellant.

Sullivan & Sullivan, for Respondent.

CHIPMAN, C.—Action for personal injury received by plaintiff in the course of her employment by defendant.   The

cause was tried before a jury and plaintiff had the verdict, with damages assessed at three hundred dollars. Judgment was accordingly entered, from which and from the order denying motion for a new trial defendant appeals.

At the time of the injury plaintiff was fifteen years and ten months old and in short dresses; she had attended the common schools, and, as testified by her mother, "was as bright and intelligent as other girls of her age; she was neither dull not stupid." She was employed in defendant's woolen goods factory from August 1, 1899, until September 6, 1899, when she received the injury complained of. Her work was at and about a machine known as a "mule," operated for the purpose of spinning wool, her service being under the direction of one Tilley, foreman for defendant. It was alleged in the complaint that attached to the rear of this machine were certain cog-wheels of a dangerous character, which were uncovered and wholly unprotected by guards or otherwise, and by which said machine was run; plaintiff was required every afternoon by said foreman to sweep the floor of said factory immediately to the rear of the machine and next to said cog-wheels; that this work of sweeping was known by defendant to be hazardous, and that plaintiff had not sufficient or any experience or knowledge to perform said work, and was ignorant of the dangers attending the same, and that defendant carelessly and negligently failed to instruct or warn plaintiff of the dangers or hazards in sweeping said portion of said factory; that on September 6, 1899, in obedience to the direction of said foreman, plaintiff undertook to sweep said floor at the rear of said mule and in and about the vicinity of said cog-wheels, and that by reason of the "fault, wrong, and negligence of said defendant, and of said assistant foreman in the premises, as aforesaid, and without any fault or negligence on the part of plaintiff, the dress of plaintiff was caught by said cog-wheels and the left thigh of plaintiff was drawn and caught by said cog-wheels, and was crushed," causing plaintiff great injury and pain, etc. Defendant in its answer denied the alleged dangerous character of said machinery or said cog-wheels; admitted that the cog-wheels were uncovered, as was customary in such cases, and alleged that no guard was necessary around them; denied that the work of sweeping around the machinery was hazardous or dangerous; alleged that

plaintiff "had full experience and knowledge and had been fully instructed how to safely perform said work; . . . that whatever dangers there were, were fully open to her observation, and could have been easily avoided by her by the exercise of ordinary care"; denied that it failed to instruct plaintiff concerning said work, and averred that by its said foreman it "fully and minutely instructed plaintiff in the premises, warned her against all probable or possible dangers, and advised her how to avoid them"; alleged that it was part of plaintiff's duty to sweep around and about said mule daily; that at all times while in defendant's employment plaintiff "was cautioned by defendant's foreman as assistant not to go behind said mule, either to sweep said floor or for any purpose whatever, until she had first stopped the motion of the machine; . . . that said cog-wheels were in plain sight, and that the danger to be apprehended from them while in motion was apparent to plaintiff"; that previous to the day of the injury "it was her custom, pursuant to the instructions given to her as aforesaid, to stop the motion of said machine before she went behind it or in the vicinity of said cog-wheels; that on said day she carelessly and negligently failed to stop the motion of said machine while sweeping said floor in the rear thereof; . . . that whatever injuries she received were the result wholly of her own negligence and were not due to any act or omission, negligent or otherwise, of defendant, its agents or servants."

This so-called mule was a machine about fifty feet long, and was one of several operated in the same room; they were placed on each side of the room, facing each other, with the rear end of each to the wall, and were operated from the front; the machine moved back and forward on a track by means of cog-wheels connected with a pulley, which was belted to a shaft above, driven by steam power; a lever worked by the operator shifted the belt so as to give an in-and-out movement of the machine on the track. Each machine had ten or eleven spools, with forty-eight threads to each spool, or about five hundred threads in all. The cog-wheels and pulley were in a compact mass at the rear. Plaintiff's duty was to change the bobbins and splice the threads when they happened to break, and to sweep around the machine. Her post of duty when operating the mule was in front, and it is not pretended that

there was any danger there. The machine was set close to the wall, the space behind the end of the tracks on which the machine moved in and out being twenty inches; the frame of the machine to which the movable part ran back was twenty-one and one-quarter inches from the wall. The cog-wheels and pulley were but eight and three-eighths inches from the wall, and this cluster of rapidly moving wheels was quite near the floor. Plaintiff was instructed to sweep around the machine and through this narrow passage every day before quitting work. Obviously, there was more or less danger to plaintiff, even in short dresses, in sweeping in this narrow passageway near the cog-wheels and pulley while the machine was in motion. A machinist of many years' experience testified: "The wheels turn in one direction while the machine comes in, and then the pulley is shifted to another wheel, making a reverse, so the machine proceeds outward again. It is unprotected. Immediately to the rear of the cog-wheels is a dangerous and hazardous place to be. A girl ought not to have to go behind there to operate the machine. It is operated from the front. If her duty required her to go near the cog-wheels, she should be warned that it was a very dangerous place to go, that she should not get caught in the cog-wheels." Another machinist of experience testified: "There is one space of twenty-one inches that they may go right into, but a space of eight and one-third inches, it would be rather hard for a child to get in. There is nothing that you can say too strong in speaking to any human being about getting into a place like that with live machinery going." This evidence went in without objection, and the witnesses, in reply to questions by defendant's counsel, said the wheels were in plain view, and no one who went behind the machine could help seeing them.

Plaintiff testified that she was employed by Mr. Broad, the superintendent, who turned her over to Mr. Tilley, Sen., the foreman, for instructions: "Mr. Tilley turned me over to his son, saying, 'My son will show you what to do.' I went with the son to the mule, and he showed me how to piece wool, how to tie the threads when they broke. He also told me that I would have to sweep the floor around the machine, back and front, and in the passageways, every night. He told me that he would sweep that night, and that I should do it afterwards,

and that it should be done about five or ten minutes to 6
o'clock.  The passageways would have to be swept before
leaving at night.  That was all he said that afternoon.  He
said nothing about cog-wheels in the rear of that machine,
nor did the foreman or superintendent, either then or any
other time, explain to me the fact that any machinery
was connected with the mule."  She testified that she had
never before had "any experience about machinery or
the operation of machinery of any kind."  Young Tilley,
a boy of sixteen years, had worked with her until with-
in two or three days of the accident; when he was there
he operated the machine, and when he was away plaintiff
worked the lever; on the day she was injured no one worked
with her.  She testified to the circumstances attending her in-
jury as follows: "The accident happened at about ten minutes
to 6 o'clock on the 6th of September, 1899.  It was getting late
and I was behind in my work; I did not have very good wool
that day, and the threads were all breaking; so Miss Hayden,
who was on the other mule, and who had a Chinaman with her,
and so her work was running good, she said she would help
me.  We were piecing the wool, and she told me that she
would piece it while I would sweep.  So, while I went to
sweep, I was sweeping behind there, and I just got up to where
the machine was, and all of a sudden my dress caught and I
was wound in."  When she started to sweep the machine was
stopped, and Miss Hayden was piecing the wool, but plaintiff
testified that she knew the machine was to be started as soon as
the wool was pieced and while she was sweeping.

   She testified that she had swept behind the "mule" all the
time she was there, under young Tilley's direction, and while
the machine was in motion; that her hours of labor were from
6:30 A. M. to 6:15 P. M., with forty-five minutes for lunch, and
she was paid seventy-five cents per day; that she never had
full charge of the machine, but started it and stopped it by the
lever whenever her duties required it; that she noticed the
passageway behind the machine was narrow, but she never
noticed the wheels; she saw the wheels, but did not notice them
particularly; that she did not know what cog-wheels were, and
had never been told what a cog-wheel was; that she had never
been told not to sweep behind the mule when it was in motion.
On cross-examination she testified :    "Q.  Did you know

what 'wheel' meant?—A. Yes, sir. I knew what wheel meant.—Q. You saw those wheels?— A. No, sir. I knew there were wheels there, but I did not pay any attention.—Q. You knew they were wheels but did not know they were cogwheels?—A. No, sir.'' Defendant introduced evidence to the effect that plaintiff was cautioned to be very careful in going around the machinery, but defendant concedes that on this point there is a conflict, and the case stands on review here as though plaintiff had received no instructions as to sweeping behind the machine, was not told of any danger in that part of her work, and was not informed as to any danger from these wheels or warned to be careful in sweeping near them.

Under these facts defendant makes two points: 1. That the proximate cause of plaintiff's injury was the negligence of a fellow-servant,—namely, Miss Hayden,—in starting the machine while plaintiff was sweeping; and 2. That the danger to which plaintiff was exposed was plainly apparent,—that the machine employed was open and visible in all its parts, its operation unconcealed, and the danger in its use obvious, and it was incumbent upon plaintiff to avoid the danger by the reasonable use of her own faculties,—and, further, that no duty of instruction rested on defendant.

1. As to the first point, the evidence does not bring the case within the rule exonerating the master where the proximate cause of the injury is the negligence of a fellow-servant. When Miss Hayden came to plaintiff's assistance it was to help plaintiff catch up in her work and to assist her in piecing the threads, which were breaking more than usual. It was understood by both of them that when Miss Hayden told plaintiff to sweep while she (Miss Hayden) spliced the wool, the machine would be started as soon as the splicing was finished and while plaintiff was sweeping. It was not unusual for her to sweep while the machine was in motion; she had done so frequently while working with young Tilley, from whom she received all the instruction ever given her. There was no negligence on Miss Hayden's part, although it is true if she had not put the machine in motion the accident could not have happened. If there was negligence at all, attributable to either of these two girls, it must rest with plaintiff alone as between them. The situation was not different when Miss

Hayden was operating the machine temporarily from the situation when plaintiff was operating it with Tilley; for she swept behind the machine while it was in motion, under his instructions.

2. The case must be resolved under the second point, and to this counsel for defendant address themselves particularly. Counsel have cited a large number of cases arising in other jurisdictions which it is contended sustain their position,— indeed, the brief leaves nothing to be desired in this particular,—and they add to the long list of authorities, as supporting their contention, the cases of *Studer* v. *Southern Pac. Co.,* 121 Cal. 400,[1] and *Loftus* v. *Dehail,* 133 Cal. 214. Respondent relies on *Ingerman* v. *Moore,* 90 Cal. 410;[2] *Foley* v. *California Horseshoe Co.,* 115 Cal. 184;[3] *Tedford* v. *Los Angeles etc. Co.,* 134 Cal. 76, and some other cases.

In *Studer* v. *Southern Pac. Co.,* 121 Cal. 400,[1] a freight-train was rightfully standing, for the time being, across a public street at the station in the town of Cordelia; a child twelve years old, passing along the obstructed street, halted for a few minutes, and, as the train did not move, she attempted to cross the train between two cars by climbing over the coupling, and while doing so the train moved without warning and the child was injured by being crushed between the cars, and soon after died. It was held that the child was guilty of contributory negligence. Upon the point as to whether the question of negligence was for the jury, and as to the rule where minors are concerned, the court stated the law with some amplification; and if the law applicable to the circumstances of that case were applicable to the facts appearing in the present case, appellant would find in the opinion much to support its contention. Appellant would interpret the Studer case as practically eliminating all distinction between minors and adults, as is also claimed for *Loftus* v. *Dehail,* 133 Cal. 214, a case in some respects similar to *Peters* v. *Bowman,* 115 Cal. 345.[4] But these cases must be considered in the light of the facts to which the rules of law were applied. There is an obvious and palpable distinction to be drawn between this class of cases and those involving the relation of

---

[1] 66 Am. St. Rep. 39.

[2] 25 Am. St. Rep. 138.

[3] 56 Am. St. Rep. 87.

[4] 56 Am. St. Rep. 106.

master and servant where the servant is a child, and this distinction is unmistakably recognized in numerous instances by this court. (*Ingerman* v. *Moore,* 90 Cal. 410;[1] *Mullin* v. *California Horseshoe Co.,* 105 Cal. 77; *Ryan* v. *Los Angeles etc. Co.,* 112 Cal. 244; *Foley* v. *California Horseshoe Co.,* 115 Cal. 184;[2] *Verdelli* v. *Gray's Harbor Com. Co.,* 115 Cal. 517.) The rule stated in *Jones* v. *Florence M. Co.,* 66 Wis. 277,[3] was quoted approvingly in *Ingerman* v. *Moore,* 90 Cal. 410,[1] and in *Ryan* v. *Los Angeles etc. Co.,* 112 Cal. 224. It is, that if a master employs a servant to do work of a dangerous character, *or in a dangerous place,* and the servant, "from youth, inexperience, ignorance, or want of general capacity, may fail to appreciate the dangers, it is a breach of duty on the part of the master to expose a servant of such character, even with his own consent, to such dangers, *unless he first gives him such instructions or cautions as will enable him to comprehend them, and do his work safely with proper care on his part.*"

In *Foley* v. *California Horseshoe Co.,* 115 Cal. 184,[2] it was pointed out that where the ordinary occupation of a minor is the running of a machine, and he "is shown to have knowledge of the working of the machine, its dangers or its defects, and where it further appears that the minor is not of such tender years as to be unable to appreciate the nature of the dangers or defects, . . . he takes upon himself as will an adult, under the same circumstances, the perils and risks of his employment. . . . But there is a distinction which, as a matter of humanity as well as law, should be drawn between such cases as those where the minor is put to a task which, while within the range of his employment, is to him, in his inexperience and youth, unusual and strange." Speaking of the claim that the minor had knowledge that the machine was liable to start, and hence he had assumed the risk attending the particular work he was doing as well as the general work, the court said: "We think that as a proposition of law this cannot be said. Were the employee in this case an adult, the rule might well be different; but the very reason why an adult under these circumstances would be held to have taken

---

[1]25 Am. St. Rep. 138.        [*]57 Am. Rep. 269.
[2]56 Am. St. Rep. 87.

the risk while screwing on the nut serves to show the injustice and hardship which would result if it were sought to be applied to a minor. The question of the taking of a risk, the question of the assumption of responsibility in a given act, is determined as much upon the matter of judgment as upon the matter of knowledge. An adult employee, when the facts are known to him, is presumed in law to exercise the same judgment as would the employer. The employer's duty is fulfilled, and he is not negligent, *if he puts the employee in full possession of the facts and makes him acquainted with the attendant dangers and risks.*" After showing that even the adult must be put in full possession of the facts, and must be made acquainted with the dangers, in order to relieve the employer, the court said: "The conduct of the child, however, is and should be viewed and measured by a different rule. . . . Knowledge he may have; facts he may acquire; but the ability to apply his knowledge or to reason upon his facts comes to him later in life. . . . It would be barbarous to hold him to the same accountability as is held the adult employee, who is an independent agent. His conduct is to be judged in accordance with the limited knowledge, experience, and judgment which he may possess when called upon to act." Upon the question whether the minor's conduct is to be judged by the jury or as matter of law by the court, it was said: "And it must, from the nature of the case, be a question of fact for the jury rather than of law for the court, to say whether or not, in the performance of a given task, the child duly exercised such judgment as he possessed, taking into consideration his years, his experience, and his ability. This must necessarily give rise to a different rule from that so well established, which measures the conduct of the adult by that which might be expected of the ordinary prudent person placed in the same position."

Applying these principles, unquestionably sound, as we think them, how stands the present case? The only evidence we have of the knowledge plaintiff possessed of the dangers attending the sweeping around this machinery, or of her knowledge of machinery generally, comes from her. The jury found that she was wholly uninstructed or warned as to the danger when sweeping in the rear of the machine and

through the very narrow passage furnished. Indeed, it might well be inferred that defendant put her to work under instructions at least implying that there was no danger whatever in sweeping behind the machine, for the failure to warn her might reasonably be taken by her as equivalent to assuring her there was no danger; and yet the duty of sweeping in this hazardous place was put upon her from the beginning, and she testified that she performed it when the machine was in motion, as well as when not running, and this her instructor, Tilley, must have known, for he worked with her until the last two or three days before she was injured, and was her only instructor.

We do not think we can, as matter of law, say that from the fact that she saw these wheels and passed them daily that she must be charged with knowledge of the danger she was incurring daily in performing this part of her duty; nor can we say, as matter of law, that she swept this narrow passage "with a full appreciation of the dangers and risks, and with sufficient judgment to know how to avoid them." The jury may well have believed her when she testified that she did not know what a cog-wheel was. She testified that she saw wheels there, but she never noticed them particularly, and this too might have been accepted as true, but the court cannot say, as matter of law, that she was negligent in not noticing these wheels carefully and ascertaining for herself whether or not they were dangerous, since she was never warned to be careful when near them, and was never instructed that any danger lurked in them, and no part of her duty required her to have anything to do with these wheels. It was said in *Foley* v. *California Horseshoe Co.,* 115 Cal. 184:[1] "The ordinary care which a child of limited judgment and experience is called upon to exercise in a given act is not the same *quantum* of care which the adult would be called upon to use under the same circumstances. Each is required to use ordinary care, but the amount of care which the person of perfected intelligence and judgment must employ is very different from the amount which the law in its humanity exacts of a minor."

The judgment and order should be affirmed.

Gray, C., and Haynes, C., concurred.

[1] 56 Am. St. Rep. 87.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Harrison, J., Garoutte, J., Van Dyke, J.

Hearing in Bank denied.