[Civ. No. 72.    Third Appellate District.—November 9, 1905.]

## ALEC FRIES, by MARY FRIES, His Guardian ad Litem, Respondent, v. AMERICAN LEAD PENCIL COMPANY, Appellant.

MASTER AND SERVANT—INJURY TO YOUNG BOY EMPLOYED IN SAWMILL—FAILURE TO WARN OF DANGER—SUPPORT OF VERDICT.—Where an inexperienced boy of nine years of age was employed in a sawmill dangerously near to a saw, in bringing blocks to be sawed, and in carrying away blocks sawed, and was injured by having his finger sawed off, a short time after he began work, without having been warned or instructed by anyone to keep away from contact with the machinery or saws, a verdict in his favor is sufficiently supported.

ID.—DUTY OF MASTER TO GIVE CAUTIONARY INSTRUCTIONS.—The law made it the duty of the master to give cautionary instructions when this nine year old boy was employed and placed amid unusual circumstances, in a noisy room full of danger even for adults.

ID.—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF CHILD—THOUGHTLESSNESS—WANT OF JUDGMENT—QUESTION OF FACT FOR JURY.—The testimony of the child that he knew the saw would cut fingers as well as boards, and that he would get hurt if he went near the saw or got against it when it was going, does not establish contributory negligence as matter of law. A child may have knowledge and acquire facts, but lack the ability to apply his knowledge. The accidents of childhood come from thoughtlessness or carelessness which are but other words for absence of judgment. It must, from the nature of the case, be a question of fact for the jury, rather than of law for the court, to say whether or not, in the performance of a given task, a child duly exercised such judgment as he possessed, taking into consideration his years, experience and ability.

ID.—OBEDIENCE OF BOY TO ELDER BROTHER—FELLOW-SERVANT—ABSENCE OF NEGLIGENCE—VERDICT NOT AFFECTED.—Where it appears that the child must have understood that he was to obey his elder brother, who was running the saw, and who had called him, and that the boy was leaning toward him in listening attitude when the accident occurred, and where, supposing the brother to have been a fellow-servant, it cannot be said, considering the noise and the circumstances of the case, that he was negligent, his action cannot affect the evidence supporting the verdict.

ID.—HEARTLESS AND UNLAWFUL EMPLOYMENT OF CHILDREN NOT TO BE FAVORED.—If employers will aid and abet heartless and mercenary parents in taking little children from the playground and the schoolroom to place them where dangerous machinery is in operation, they cannot expect courts to favor them as to the degree of care required of them, or to place technical limitations on the right of a jury to

weigh the words, acts, ability and capacity of such children, in the light of natural impulses, attributes and characteristics, in actions for injuries received during the course of an employment denounced by the rules of humanity, and by a law of this state.

APPEAL from a judgment of the Superior Court of Fresno County.    George E. Church, Judge.

The facts are stated in the opinion of the court, and in the opinion on the former appeal therein referred to.

L. L. Cory, for Appellant.

A. M. Drew, and F. H. Short, for Respondent.

McLAUGHLIN, J.—This is an action to recover damages for injuries sustained by plaintiff while employed by defendant in a sawmill, or factory, where lumber was being sawed into small slabs called "pencil boards." From a judgment in favor of plaintiff, defendant appeals.

The record here discloses the facts recited in the decision upon a former appeal in this case. (*Fries* v. *American Lead Pencil Co.*, 141 Cal. 612, [75 Pac. 164].)    Other additional and pertinent facts are gathered from the uncontradicted evidence of an older brother of plaintiff, named Jack, who was working in the factory, and who testified as follows: "Mr. Jones had told me what work he wanted Alec to do; that is, to bring the blocks over to me at the machine, and when they were cut up into slabs to tie them up into bundles, and take them away. When we went to the millroom where the saws were, Alec went in with me. I guess there were five or six others there. There was a big circular saw and another saw that were cutting the slabs, with six or seven saws on it all at once cutting the slabs. They were all in the same room and the room was fifty by forty feet, I should judge. There was considerable noise in the room. He was working four or five feet from me. The table where I was at work was three or four feet wide, machine and everything, and two feet to two feet and a half long. The saw was, I guess, a ten-inch saw in diameter. I did not tell him before anything about the danger of the machine, neither did the superintendent, or the manager, Mr. Jones. No instructions were given him at all, nor warning about the danger from the saw. His

duty was really to work in picking up blocks and binding them into bundles and piling them up, and to bring me blocks on the other side of the table for sawing. . . . I had not got any blocks from the other saw when I called him over. When I ran out of blocks I called him to get some more blocks for me. Alec had no work to do about the machine or handle the machine or with the machine. He was working about a foot and a half to two feet from the end of the machine where I was working, about four feet away from me. As I ran the blocks through the machine and made the slabs they fell into a box below. It was Alec's duty to keep the box empty and pick out the slabs as they were cut up, and put them in bundles, and take them away. The saw was at the side of the machine and there was a fence over it. It is a kind of a protection to a person handling the machine so they would not cut their hands on it. Alec was picking up slabs when I called him over to me. I could hardly talk to him when he was four feet away, and had to have him come over nearer so I could talk to him. I could have talked to him at a distance of four feet if I talked pretty loud. I had to call him twice, and he heard me when I hallooed to him. When he heard me he came over to see me. As he came over, I don't know as he put his hand on the machine, but that was the way it happened. When he came over his hand went down on the machine— put his hand on the machine. In other words, the accident could not have happened unless he put his hand on the saw. It was running all the time, and had been so all the morning. It was perfectly visible to him, as well as anybody else that the saw was running. He was a boy of good eyesight, and the saw was running all right. The sole reason I called him over was to tell him to get blocks. The reason I did not tell him at the distance of four feet instead of calling him over, was because I did not want to halloo to him, and call the other boys' attention from their work.'' The manager, Mr. Jones, testified that he told Jack to bring his brother to work the evening before, and that the next morning he said to him: ''You take him and put him to work under you. Instruct him how to tie the bundles up and carry them over and set them up against the wall.'' This is denied by both plaintiff and his brother, but all agree that

at no time did any person warn plaintiff, who was but nine years old, that he would have to be careful when he was near the saws or moving about the table. It is apparent from the foregoing statement that while plaintiff had nothing to do with the operation of the saw, his duties called him dangerously close to where it was being operated by his brother. Thus, unadmonished, uncautioned, and unskilled, this little boy commenced to work in that noisy room at 7 o'clock in the morning, under the direction of a brother, eighteen years of age. About one and one-half hours thereafter, two of his fingers were cut off by the small circular saw on the side of the table near which he was at work, under the circumstances above narrated.

The principal point urged by appellant is that, under the decision rendered upon the former appeal, the testimony of plaintiff is absolutely fatal to his right to recover. The evidence of plaintiff relied upon is to the effect that plaintiff noticed the saw running and cutting boards; that he knew that it would cut fingers as well as boards; and that he would get hurt if he went near the saw or got against it when it was going. It is said that this shows that the child was of sufficient intelligence to be able to comprehend, and did in fact comprehend, the danger surrounding his occupation, and there being no evidence to the contrary, no negligence could be imputed to defendant if it did not give plaintiff instructions as to danger. But the decision upon the former appeal lays down the well-known rule that the tender years of plaintiff, his capacity for understanding and appreciating the dangers surrounding his employment, were potent factors in determining whether defendant was absolved from the duty of instructing plaintiff as to such dangers and the necessity for caution and care. In *Foley* v. *California Horseshoe Co.*, 115 Cal. 192, [56 Am. St. Rep. 87, 47 Pac. 42], the same learned justice who wrote the opinion on the former appeal, explained this rule in a masterly and comprehensive opinion. It was there said: "The question of the taking of a risk, the question of the assumption of responsibility in a given act, is determined as much upon the matter of judgment as upon the matter of knowledge. . . . Children are taught obedience. They are taught not to oppose their will and their judgment to those in authority over them; but in

addition to this, and more important than all, the judgment of the child is the last faculty developed. . . . Knowledge he may have; facts he may acquire; but the ability to apply his knowledge or reason upon his facts, comes to him later in life. The very accidents of childhood come from thoughtlessness and carelessness, which are but other words for absence of judgment. . . . Their conduct is to be judged in accordance with the limited knowledge, experience and judgment which they possess when called' upon to act and it must, from the nature of the case, be a question of fact for the jury, rather than of law for the court, to say whether or not, in the performance of a given task the child duly exercised such judgment as he possessed, taking into consideration his years, his experience, and his ability.'' This exposition of the law has been pronounced ''unquestionably sound'' in many well-considered cases. (*O'Connor* v. *Golden Gate*, 135 Cal. 545, [87 Am. St. Rep. 127, 67 Pac. 966], *Mansfield* v. *Eagle Co.*, 136 Cal. 622, [69 Pac. 425]; *Killelea* v. *California Horseshoe Co.*, 140 Cal. 605, [74 Pac. 157].) Had the jury, in the case at bar, before them facts or circumstances sufficient to justify the conclusion that plaintiff did not understand and appreciate the dangers surrounding him? We think they had. Appellant's contention rests upon a literal construction of plaintiff's words. But the jury knew that the child was only nine years old when injured, though thirteen years of age when testifying. His evidence justified the full application of their intuitive knowledge, that thoughtlessness is at once the source of happiness and danger to children of that age. His evidence as to knowledge is offset by the absence of judgment and want of appreciation, eloquently attested by the fact that, notwithstanding his knowledge, and the natural tendency to shrink from pain and injury, he did the very thing which judgment, born of reason, would prompt him to avoid. After stating his knowledge touching the cutting power of the saw, in the same connection he artlessly said: ''Jack called me, and I went over there, and leaned against the table, and got my hand against the saw, and that is the way my hand got cut.'' This is precisely what might be expected of a child of that age whose ''thoughtlessness and carelessness are but other words for absence of judgment.''

And this is precisely what the appellant should have anticipated and guarded against, by impressing upon the mind of this mere child the lesson that he must carefully avoid coming in contact with the machinery or saws.

This is the very reason the law made it the duty of appellant to give cautionary instructions when this nine year old boy was employed and placed amid unusual surroundings in a noisy room, full of danger even to adults. The laws of nature constitute an integral part of the evidence in every case, and the jury had a right to view the acts of this child in the light of general and immutable laws governing the conduct, impulses, and mental development of children. They had a right to consider every fact and circumstance bearing upon his knowledge and appreciation of dangers surrounding him, and to measure his words by the standard of his acts. They saw him on the stand and heard him testify. With the knowledge of his mental capacity thus gained, they could measure both his words and acts with far more accuracy than an appellate court, having before it only a transcript of his evidence in narrative form. Having this knowledge, they could reason what an ordinary child would be likely to do when called to receive instructions from an older brother, whom he would naturally look up to, and whom he had been given to understand he must obey. Children, under such circumstances, intuitively advance with upward look of expectancy or inquiry, and the jury could gather from his statements and acts that this was what he did, as he leaned forward to catch the words of command from his brother's lips. He had not been cautioned. On the contrary, he must have understood that he was to obey his brother, toward whom he was leaning in listening attitude when the accident occurred. It was suggested in oral argument that his brother was a fellow-servant, and that his negligence contributed to plaintiff's injury. Conceding, solely for the purpose of answering this suggestion, that Jack occupied the position of a fellow-servant when engaged in giving commands to the lad placed under him, still, the noise and circumstances considered, we do not think Jack was negligent. We therefore hold that there is sufficient evidence to support the verdict and judgment. If employers will aid and abet heartless and mercenary parents in taking

little children from the playground and schoolroom to place them in factories or mills where dangerous machinery is in operation, they can hardly expect courts to indulge in nice discrimination touching the *quantum* of care and caution to be expected of such children. Nor can they expect courts to place technical limitations on the right of a jury to weigh the words, acts, ability and capacity of children in the light of natural impulses, attributes and characteristics, in actions for injuries received during the course of an employment denounced by rules of humanity and by a law of this state. We have carefully examined the instructions complained of, and are satisfied that, read as a whole, the instructions contain a fair and correct statement of the law.

The judgment and order are affirmed.

Chipman, P. J., and Buckles, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 8, 1906.