14208

LYONS v. R. D. COLE MFG. CO. INC.

(183 S. E., 466)

*Mr. Hugh O. Hanna,* for appellant,

*Mr. George Warren,* for respondent,

January 15, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was brought by the plaintiff against the defendant for the recovery of damages for personal injuries sustained by him on the 14th day of September, 1934, while employed by the defendant in moving a heavy steel girder which was to be used in the construction of a water tank in the town of Hampton.

The appellant was engaged in erecting this water tank under a contract given it under the rules and regulations of the Federal Public Works Administration, under which rules it was required to employ laborers through the local National Re-employment Office. The respondent and three other laborers were thus secured through the re-employment office. They commenced to work with the appellant on September 13th. At the time of the injury the respondent was engaged, with the three other laborers referred to, in rolling on the ground a steel girder 35 feet long, and weighing about 1,600 pounds. The girders were to be rolled near to the base of the water tank, and from this point they would be hoisted

to their appointed place in the superstructure. The girders consisted of two parallel steel beams joined together by steel latticework running diagonally from one beam to the other. The interstices in this latticework were sufficiently large to allow the insertion of timbers 2"x4", and about 4 or 5 feet long, which were furnished the respondent and the three other laborers to be used as pry poles in turning the girders over. The operation of turning was accomplished by inserting the timber or pry pole in the openings referred to, and then the workmen would exert a downward pull of sufficient force to turn the girder. This operation would be repeated time and again until the girder was placed at the base of the. tank. In the turning process it was necessary that the timbers used as poles be withdrawn at the moment the girder got beyond the exact point of balance. The respondent was injured while doing this work by reason of his failure to remove his pry pole in time, which in some manner, not entirely clear from the evidence, struck him on the chin, inflicting painful injuries, and knocking him to the ground, where his head came in contact with some hard object lying there, which caused an injury to his head.

Allegations of negligence were that appellant failed to furnish a safe place to work; failed to provide proper tools; failed to instruct the respondent how to perform the dangerous work; giving erroneous instructions in doing the work; and failing to furnish skilled laborers in said work.

The answer of the defendant was a general denial of these allegations, and further that the injury was caused by the negligence of the respondent, contributory negligence, assumption of risk, and negligence of a fellow servant.

The trial resulted in a verdict for the respondent.

Motions were duly made for a nonsuit, for a directed verdict, and for a new trial, all of which were refused.

All of the exceptions except one—which imputes error to the trial Judge on account of his instructions to the jury—clearly raise but one question, and that is: Was there any evidence under the scintilla rule tending to support the al-

legations of the complaint, sufficient to take the case to the jury? In view of this issue it becomes necessary to review the testimony.

The testimony tends to show that the respondent and his three co-laborers employed in rolling these girders were inexperienced in this line of work. They commenced the work of moving the girders on the afternoon of the 13th, and were still so engaged on the 14th, when the respondent was injured. The respondent, who is a man of mature years, had had some experience in working in and about sawmills, and had been inured to manual labor all of his life. He testified that the appellant's foreman gave him and his three co-laborers instructions as to how this work should be performed, how the pry poles should be inserted as levers in the latticed openings of the girders, and in what way the girders should be turned; and that he had been cautioned by the foreman several times during the two days of his work to be careful and prompt to withdraw his pry pole at the time when the girder in turning passed the point of balance.

In describing how he was injured, the plaintiff said: "We were working in rolling this post (girder) over with this piece of timber stuck in the slat work, then we pulled down on that to turn it over, and while we were turning that post, from neglect or some way this piece flew up and hit me." He further testified that it was necessary that the pry poles should be removed from the steel girders "exactly at the moment it gets beyond the exact balance," and that if the operation were not performed quickly the pry pole would catch in the opening in the latticework where it was inserted, and would "squeeze you down." He also testified that the pole "should have been something you could turn and pull out quicker than that. If we had had something else it would have been a whole lot easier to handle than that stick." But that he did not realize this at the time he was working; and he expressed the opinion that the stick used should have been round instead of a 2"x4" timber. Further in his testimony the plaintiff stated: "If you pull

your stick out before it goes to turn this way, then it is going to squeeze you down, but when I went to pull it out, it hit me under the chin."

The plaintiff denied all negligence, asserted that the work required skilled labor, and that he was not a skilled laborer in this kind of work, and did not know how to handle it.

The foreman of the appellant, under whose supervision this work was being done, testified that he had given the respondent and his co-laborers full instructions as to the handling and manipulation of the girder in rolling it over, and had cautioned the respondent on several occasions upon the necessity of pulling his pole out in time to avoid being hurt; and he further testified that this was the usual and customary method of doing this character of work.

Two of the respondent's co-laborers, engaged in rolling the girder at the time the respondent was hurt, testified that they and the respondent had been working the afternoon before in rolling these steel columns; that they were located close to the base of the tank, and had to be given three or four complete revolutions in order to place them in proper position for hoisting. They further testified that the foreman had instructed them and the respondent in great detail as to how the timbers should be placed in the girders to turn them over, and how the timbers should be withdrawn in order to avoid injury; that the respondent neglected to pull his stick out, and "it hit him."

The witness, Woods, testified that the openings in the latticework were large enough for a timber 4"x6" to be inserted, and that there was "plenty of room to put your stick in there and get it out in plenty of time," and that four men were amply sufficient to do the work. The witness Woods and the witness Cain both testified that they were inexperienced in doing work of this nature; and that the foreman of the appellant gave them and the respondent, Lyons, clearly to understand that the work was very dangerous; that two men could easily turn the girder.

It is impossible to read the evidence, which we have carefully examined, without reaching the conclusion that a verdict should have been directed for the defendant.

In the view that we take of this case, we shall consider chiefly the doctrine of assumption of risk.

It is axiomatic that assumption of risk applies only to known dangers, or those which are so obvious as to be readily perceived; and that a servant assumes only the ordinary risks incident to the employment, and not the unusual, exceptional, and extraordinary risks and dangers. It is likewise true that a mere knowledge of a risk or danger, without a full appreciation and comprehension of it, is not conclusive against the servant's right of recovery in the event of injury.

The general rule, with reference to inexperienced servants, is well expressed in *O'Connor v. Golden Gate Woolen Manufacturing Company,* 135 Cal., 537, 67 P., 966, 969, 87 Am. St. Rep., 127: "If a master employs a servant to do work of a dangerous character, or in a dangerous place, and the servant, 'from youth, inexperience, ignorance, or want of general capacity, may fail to appreciate the dangers, it is a breach of duty on the part of the master to expose a servant of such character, even with his own consent, to such dangers, unless he first gives him such instructions or cautions as will enable him to comprehend them, and do his work safely with proper care on his part.'" 18 R. C. L. § 76, p. 565.

In the light of the testimony and of the foregoing principles of law, the question in this case is: 'Did the respondent know, or ought he, in the exercise of ordinary common sense and prudence, to have known and comprehended the risks to which the work exposed him? The testimony conclusively shows that he was using the simplest of appliances, and was engaged in work obviously dangerous. While the testimony shows that he was inexperienced in this line of work, yet he is a man of mature years, certainly of ordinary intelligence, and accustomed to

manual labor. He admits that he was given instructions and warnings by the foreman in charge of the work, and that upon several occasions he was cautioned about withdrawing the timber he was using as a pry pole in time to avoid injury to himself. The evidence negatives any reasonable inference that he failed to comprehend and appreciate the nature of the work he was engaged in, and its attendant dangers.

This case is analogous in the principles of law involved to *Kinsey v. Colleton Cypress Co.,* 118 S. C., 234, 110 S. E., 395, and *Stroman v. Hooper Construction Co.,* 171 S. C., 393, 172 S. E., 417.

> It is elementary that the master is not an insurer of absolute safety to a servant. The test of the master's liability is not danger, but negligence.

As we see it, the testimony in the case—giving the plaintiff the benefit of every reasonable doubt—is susceptible of only one reasonable, legitimate inference, and that is that the plaintiff assumed the risk of injury from dangers which were patent and obvious. The proximate cause of his injury may be traced to plaintiff's own negligence, and not to the negligence of the defendant. He is the victim of an unfortunate accident, but liability therefor may not justly be laid at the door of the appellant.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and that the cause be remanded for entry of judgment in favor of the defendant under rule 27.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.