THE HON. WILLIAM L. HOLLOWAY, ⎫
⎬ Associate Justices.
THE HON. HENRY C. SMITH. ⎭

---

FORQUER, RESPONDENT, *v.* SLATER BRICK CO., APPELLANT.

(No. 2,518.)

(Submitted October 6, 1908. Decided October 24, 1908.)

[97 Pac. 843.]

*Master and Servant—Personal Injuries—Minors—Dangerous Machinery—Defective Appliances—Pleadings—Instructions—Proximate Cause—Evidence—Expert Witnesses.*

Master and Servant—Personal Injuries—Dangerous Machinery—Safety Appliances.
 1. Where a master has furnished a servant with reasonably safe and suitable machinery in general use in the same kind of business, and the servant is injured without the master's fault, the latter cannot be made liable because of his failure to use some attachment or special device which might have rendered the machine less dangerous and thus have avoided the accident.

Same—Personal Injuries—Guarding Dangerous Machinery—Proof.
 2. Plaintiff's failure to adduce proof in support of his allegation that defendant was negligent in operating the pugmill referred to, without guarding the knives, by showing what, if any, precautions could or might have been taken by defendant to guard the knives, precluded him from recovery on this allegation of negligence.

Same—Personal Injuries—Evidence—Causal Connection Between Defective Appliances and Injury.
 3. Before plaintiff can recover in an action against his employer for damages to compensate him for personal injuries claimed to have been sustained by reason of defendant's negligence in supplying him

(426)

with defective appliances with which to work, there must be some substantive testimony showing a causal connection between the injury and the alleged defects; hence, in the absence of evidence showing any defect in an appliance, and where the accident appeared to have been a wholly fortuitous one, the happening of which could not have been anticipated, a verdict against defendant could not be based upon the allegation that defendant had been negligent in furnishing a defective appliance.

Same—Defective Appliances—Presumptions.

4. In a personal injury action by a servant against the master for injuries caused by defective appliances, the presumption is that the appliances were not defective, and, when shown to have been so, that defendant had no knowledge or notice and was not negligently ignorant thereof.

Same—Personal Injuries—Minors—Dangerous Machinery—Complaint—Insufficiency.

5. A complaint brought in behalf of a minor against his employer in an action to recover damages for personal injuries, charging, among other things, negligence in failing to explain to plaintiff the dangers to be apprehended from the running of a pugmill provided with exposed revolving knives, should allege, not only the age of plaintiff, but such other facts as are relied upon to show the necessity for explanations and instructions as to how to avoid the dangers connected with the appliance.

Same—Personal Injuries—Minors—Obvious Dangers—Duty of Master.

6. Where the danger to be apprehended from the running of the mill in question in this case was apparent to a boy of plaintiff's age and intelligence, and plaintiff knew all about it, defendant employer was not charged with the duty of apprising him thereof. Instructions relative thereto would have been useless, and negligence could not be predicated upon defendant's failure to give them.

Same—Minors—Personal Injuries—Dangerous Machinery—Duty of Master —Instructions How to Avoid Dangers—Question for Jury.

7. The court instructed the jury that it was the duty of defendant to explain to plaintiff wherein the dangers incident to the running of the pugmill lay, and to show him how to do the work in such a way as to avoid them. *Held*, under the circumstances of this case, that the question whether it was the duty of defendant to give such instructions to plaintiff should have been submitted to the jury under proper instructions.

Same—General Principle.

8. In an action by a minor against his employer for injuries sustained while engaged in operating dangerous machinery, the jury should consider the age, experience or inexperience of the person injured, and all the surrounding circumstances, including the instructions given him, if any, as to what work he should perform and the manner of performing it; together with his knowledge of the dangers, patent or latent, and then determine, as a matter of fact, whether the master knew, or, in the exercise of ordinary care, should have known, that the servant required additional warnings, explanations or precautionary instructions to enable him, if he heeded the same, to avoid the dangers, and should, in the exercise of like care, have instructed him accordingly.

Same—Master's Duty—Question for Jury.

9. Defendant having instructed plaintiff (a minor) to water clay as it passed through a pugmill and feel of it to ascertain the proper degree of moisture, it was a question for the jury to determine whether

defendant, in the exercise of ordinary care, should have apprehended that plaintiff would probably attempt to do both acts at the same time and whether he should have been instructed accordingly.

Same—Minors—Personal Injuries—Manner of Happening of Accident— When Immaterial.

10. If defendant was chargeable with knowledge that in the exercise of reasonable care it was incumbent upon it to give plaintiff such instructions as would have enabled him to avoid the danger incident to coming in contact with the revolving knives of the pugmill, and plaintiff was in the discharge of his duty at the time of the injury and did not intentionally and knowingly place his hand where he knew it would be injured, the reason why the plaintiff's hand came in contact with the revolving knives was immaterial.

Same—Personal Injuries—Instructions to Jury—Proximate Cause.

11. The court instructed the jury -that if the work plaintiff was directed to do was attended with dangers from the knives of the pugmill, and he was injured by the knives, and such dangers were not explained or apparent to him, or he did not understand or appreciate them, and, if he exercised the care of an ordinary person of his years and experience, he was entitled to recover. *Held*, that the instruction was erroneous as permitting a recovery, though none of the acts of negligence charged was the proximate cause of the injury.

Same—Personal Injuries—Expert Witnesses—Evidence of Similar Accidents—When Inadmissible.

12. The dangers connected with the machinery above mentioned having been patent, and the happening of the accident, as narrated by plaintiff, a wholly fortuitous one, evidence by expert witnesses that in the course of their experience they had never heard of an accident happening in a similar manner could not have aided the jury in arriving at a verdict, and was properly excluded.

*Appeal from District Court, Yellowstone County; Sydney Fox, Judge.*

ACTION by Claud Earl Forquer, a minor, by C. F. Forquer, his guardian *ad litem*, against the Slater Brick Company. Judgment for plaintiff, and defendant appeals from the judgment and an order denying it a new trial. Reversed and remanded.

*Mr. Fred H. Hathhorn, Messrs. Walsh & Nolan, and Mr. Harry A. Groves, for Appellant.*

Before negligence can be imputed to the appellant in not having the knives of the pugmill in question guarded, some evidence must be submitted that it is usual or customary to box them, or at least that it is practicable to do so. (*Mississippi R. L. Co.* v. *Schneider*, 74 Fed. 195-200, 20 C. C. A. 390.) When the master furnishes machinery that is in universal

use in the business he prosecutes, his duty in that regard is fulfilled. (*Washington etc. Ry. Co.* v. *McDade,* 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; *Fritz* v. *Salt Lake & O. G. & E. L. Co.,* 18 Utah, 493, 56 Pac. 90-92; *Sappenfield* v. *Main St. & A. P. R. Co.,* 91 Cal. 48, 27 Pac. 590.)

The mere fact that the accident happened because of defective appliances or instrumentalities, cannot be taken as evidence of appellant's negligence. (20 Am. & Eng. Ency. of Law, 87; *Chicago etc.* v. *Kellogg,* 55 Neb. 748, 76 N. W. 462; *Patton* v. *Texas & P. R. Co.,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361.)

While the authorities are divergent as to the necessity of pleading that the master knew of, or ought to have ascertained, the condition of defective machinery furnished for the use of the servant, some of the courts holding that the averment that it was negligently furnished implies knowledge actual or constructive, all agree that the proof must tend to establish the fact or no case of negligence is made out. (4 Thompson's Commentaries, 3864; note to *Walkowski* v. *Penokee & Co. Con. Mines,* 115 Mich. 629, 73 N. W. 895, 41 L. R. A. 33; 20 Am. & Eng. Ency. of Law, 78; *South Baltimore Car Works* v. *Schaffer,* 96 Md. 88, 94 Am. St. Rep. 560, 53 Atl. 665; *Purdy* v. *Westinghouse Co.,* 197 Pa. 257, 80 Am. St. Rep. 816, 47 Atl. 237, 51 L. R. A. 881.)

In determining whether the master is negligent, it is not enough to find that he provided a machine or appliance which was defective, but one which was defective in such a way as to endanger the safety of the servant, one which he ought to have anticipated would result in injury to him. (*Walkowski* v. *Penokee etc. Con. Mines,* 115 Mich. 629, 73 N. W. 895, 41 L. R. A. 33; *Rysdorp* v. *George Pankratz L. Co.,* 95 Wis. 622, 70 N. W. 677.)

Proof that a witness long familiar with the business of brickmaking never knew of an injury being occasioned in the manner here alleged was admissible. (*Doyle* v. *St. Paul M. & M. Co.,* 42 Minn. 79, 43 N. W. 787; *T. & H. Pueblo B. Co.* v.

*Klein,* 5 Colo. App. 348, 38 Pac. 608; 2 Labatt on Master and Servant, 820 *b;* Watson on Damages, 156.)

Negligence cannot be predicated upon the failure to instruct youthful servants touching the dangers attendant upon the operation of machinery when such dangers are obvious and must have been comprehended. (*Hess* v. *Escanaba W. Co.,* 146 Mich. 566, 109 N. W. 1058; *Berlin* v. *Mershon & Co.,* 132 Mich. 183, 93 N. W. 248-259; *Stevens* v. *Gair,* 96 N. Y. Supp. 303, 109 App. Div. 621; *Daniels* v. *New England C. Y. Co.,* 188 Mass. 260, 74 N. E. 332; *Walton* v. *Lindsay L. Co.,* 145 Ala. 661, 39 South. 670; *Mathis* v. *Magnolia M. Co.,* 140 N. C. 530, 53 S. E. 349, 6 L. R. A., n. s., 337; *Sullivan* v. *Simplex E. Co.,* 178 Mass. 35, 59 N. E. 645; *Ludwig* v. *Pillsbury,* 35 Minn. 256, 28 N. W. 505.)

Unless the appellant ought to have anticipated that the injury would or might occur in the way in which it did, there can be no recovery. (*Diehl* v. *Standard Oil Co.,* 70 N. J. L. 424, 57 Atl. 131.)

*Mr. W. M. Johnston, Messrs. Wallace & Donnelly, Mr. John G. Brown,* and *Mr. R. F. Gaines,* for Respondent.

Where the employee is a minor—an infant—the master must give full instructions to the minor with reference to the dangerous character of the machinery, with or about which the minor is employed, and of the means and ways necessary to be used and followed in order to avoid these dangers. (Labatt on Master and Servant, sec. 19; Cooley on Torts, p. 553; *Jones* v. *Florence,* 66 Wis. 268, 57 Am. Rep. 269, 28 N. W. 207; *Parkhurst* v. *Johnson,* 50 Mich. 70, 45 Am. Rep. 28, 15 N. W. 107; *Dowling* v. *Allen,* 74 Mo. 13, 41 Am. Rep. 298; *Coombs* v. *New Bedford Cordage Co.,* 102 Mass. 572, 3 Am. Rep. 506; *Fisk* v. *Central Pac. Ry. Co.,* 72 Cal. 38, 1 Am. St. Rep. 22, 13 Pac. 144; *Kline* v. *Central Pac. Ry. Co.,* 37 Cal. 400, 99 Am. Dec. 282; *Rice* v. *King Philip Mills,* 144 Mass. 229, 59 Am. Rep. 80, 11 N. E. 101; *Cleveland Rolling Mill* v. *Corrigan,* 46 Ohio

St. 283, 15 Am. St. Rep. 596, 20 N. E. 466, 3 L. R. A. 385.) Changing a minor's work and making it more dangerous alone has been held to render the master liable for failure to warn. (*Weaver* v. *Iselin,* 161 Pa. 386, 29 Atl. 49.) It is the positive duty of the master to warn his minor servants. (*Hanson* v. *Ludlow,* 162 Mass. 187, 38 N. E. 363; *Kaillen* v. *Northwestern Co.,* 46 Minn. 187, 48 N. W. 779; *Smith* v. *Irwin,* 51 N. J. L. 507, 14 Am. St. Rep. 699, 18 Atl. 852; *May* v. *Smith,* 92 Ga. 95, 44 Am. St. Rep. 84, 18 S. E. 360; *James* v. *Lumber Co.,* 50 La. Ann. 717, 23 South. 469, 44 L. R. A. 52; *Missouri Pac. Ry. Co.* v. *Peregoy,* 36 Kan. 424, 14 Pac. 7; *Turner* v. *Norfolk Ry.,* 40 W. Va. 675, 22 S. E. 83; *Hoffman* v. *Adams,* 106 Mich. 111, 64 N. W. 7; *Campbell* v. *Eveleth,* 83 Me. 50, 21 Atl. 784; *Hayes* v. *Colchester Mill Co.,* 69 Vt. 1, 60 Am. St. Rep. 915, 37 Atl. 269; *Dowling* v. *Allen,* 102 Mo. 213, 14 S. W. 751; *New Albany Co.* v. *Cooper,* 131 Ind. 363, 30 N. E. 294, 295; *Canton Co.* v. *Edwards,* 120 Ga. 447, 47 S. E. 937; *Stark* v. *Port Blakely Mill Co.,* 44 Wash. 309, 87 Pac. 339.)

Under the law applicable to this case the minor employee was entitled to the added protection of the guard over the knives, even though it might not be necessary to have so guarded them if it had been a grown person working there. (*Taylor* v. *Wootan,* 1 Ind. App. 188, 50 Am. St. Rep. 200, 27 N. E. 502; *American Tobacco Co.* v. *Strickling,* 88 Md. 500, 41 Atl. 1083, 69 L. R. A. 909; *Coombs* v. *New Bedford Cordage Co.,* 102 Mass. 572, 3 Am. Rep. 506; *White* v. *Nonantum,* 144 Mass. 276, 11 N. E. 75; *Stager* v. *Laundry Co.,* 38 Or. 480, 63 Pac. 645, 53 L. R. A. 459; *Roth* v. *Northern Pac. L. Co.,* 18 Or. 205, 22 Pac. 842; *Pittsburgh etc.* v. *Sentmeyer,* 92 Pa. 276, 37 Am. Rep. 684.)

A minor servant is not to be charged with assumption of risk, the law recognizing a lack of appreciation and knowledge of things on his part and relieving him from this burden. (*Davis* v. *Railway Co.,* 53 Ark. 117, 13 S. W. 801, 7 L. R. A. 283; *Brazil etc. Co.* v. *Gaffney,* 119 Ind. 455, 12 Am. St. Rep. 422, 21 N. E. 1102, 4 L. R. A. 850; *Dowling* v. *Allen, supra;*

*Robertson* v. *Cornelson,* 34 Fed. 716; *Hill* v. *Gust,* 55 Ind. 45; *Laning* v. *New York Cent. Ry. Co.,* 49 N. Y. 521, 10 Am. Rep. 417; *Rummell* v. *Dilworth,* 111 Pa. 343, 2 Atl. 355, 363; *Beck* v. *Mills Co.,* 1 Ga. App. 278, 57 S. E. 998, and cases cited therein; *Blumenthal* v. *Craig,* 81 Fed. 320, 26 C. C. A. 427; *Nadau* v. *White River Lumber Co.,* 76 Wis. 120, 20 Am. St. Rep. 29, 43 N. W. 1135; *McCarragher* v. *Rogers,* 120 N. Y. 526, 24 N. E. 812.)

Before testimony upon the question of an accident of a like nature ever having been known to have occurred theretofore is admissible it must be shown that the conditions were the same as the ones under investigation, and the witness must have a familiarity with such conditions. Nothing of this kind was shown in this case. (*Bair* v. *Struck,* 29 Mont. 45, 74 Pac. 69, 63 L. R. A. 481; *Clapp* v. *Minneapolis etc. Ry. Co.,* 36 Minn, 6, 1 Am. St. Rep. 629, 29 N. W. 340; *Denver Co.* v. *Reed,* 4 Colo. App. 53, 35 Pac. 269.) The greater number of courts, however, hold that it is not admissible, in that it tends to raise collateral issues, confuses the jury, and has no tendency to disprove the dangerous character of the place in question. (21 Ency. of Law, 520, note 3; *Hodges* v. *Bearse,* 129 Ill. 87, 21 N. E. 613; *Atkinson* v. *Goodrich Trans. Co.,* 69 Wis. 5, 31 N. W. 164; *Bloor* v. *Town,* 69 Wis. 273, 34 N. W. 115; *Lutton* v. *Vernon,* 62 Conn. 1, 23 Atl. 1020, 27 Atl. 589; *Taylor* v. *Monroe,* 43 Conn. 36; *Burgess* v. *Davis Sulphur Ore Co.,* 165 Mass. 71, 42 N. E. 501; *Temperance Hall Co.* v. *Giles,* 33 N. J. L. 260; *Branch* v. *Libbey,* 78 Me. 321, 57 Am. Rep. 810, 5 Atl. 71; *Hudson* v. *C. & N. etc. R. R. Co.,* 59 Iowa, 581, 44 Am. Rep. 692, 13 N. W. 735; *Louisville & N. Ry.* v. *Kemper,* 153 Ind. 618, 53 N. E. 931; *Houston* v. *Brush,* 66 Vt. 331, 29 Atl. 380; Labatt on Master and Servant, sec. 820.)

MR. JUSTICE SMITH delivered the opinion of the court.

This action was brought in the district court of Yellowstone county to recover damages for personal injuries suffered by the

respondent, due, as it is claimed, to the negligence of the appellant.

Plaintiff alleges in his complaint, among other things, as follows: ''That on or about the sixteenth day of August, 1906, he was in the employ of defendant at a certain brickyard, in or near the city of Billings, and that the duties of his said employment were to throw in and out of gear, by means of a lever, a certain lugging machine used in the manufacture of brick in said yard, and to oil said machinery; that the plaintiff was at said time only thirteen years of age, and was wholly unskilled in the use of machinery, and had been in the employ of defendant for a period of only three days; that while so engaged in said employment, and on or about said date, the said defendant, without explaining to said plaintiff the dangers to be apprehended from said machinery, carelessly and negligently directed this plaintiff to take a certain hose and turn water upon the clay that was being fed through said lugging machine, and to feel of the clay that was being turned out of said machine to ascertain as to the degree of moisture therein; that, in disregard of its duty, the said defendant had carelessly and negligently allowed certain revolving knives connected with said machinery to be and remain unboxed and unguarded in any manner whatsoever, and that said knives were located in that portion of said lugging machine where plaintiff was so negligently directed to use said hose and to feel of the clay so emerging from said machine, as aforesaid, and that, in further disregard of its said duty, defendant carelessly and negligently furnished for use in turning the water upon said clay, as aforesaid, a hose which was wholly defective and unfit for use, in that the appliance for controlling the size and force of the stream emerging from the nozzle thereof had become so weak as to slip and allow the full force of the water to suddenly issue from said nozzle, of all of which defects defendant well knew, or, in the exercise of due care, ought to have known; that in obedience to the direction of said defendant, and while in the exercise of due care on his part, and in ignorance of the

danger connected with said machinery and of the defects in said appliances, none of which this plaintiff either knew of or appreciated, plaintiff took said hose in his left hand and turned the stream of water upon the clay in said machine, using his right hand at the same time to feel of the clay emerging from said machine; and that while so employed, and because of the said negligent arrangement of said knives and said defects in said hose, the plaintiff's left hand came against and upon the revolving knives of said machine so negligently left unguarded and unboxed, as aforesaid, in consequence whereof plaintiff's left hand was cut, torn and mutilated and the bones thereof broken, and the usefulness of said hand was permanently destroyed.'' Defendant by its answer denied all of the material allegations of the complaint, except the one that plaintiff's hand was injured. It further alleged affirmatively that the plaintiff was a bright, intelligent, active boy fully capable of preserving his safety under the circumstances described in the complaint, and that the injuries then sustained by him were the direct consequence of his contributing fault and carelessness; that the conditions of said hose and lugging machine were obvious, and the dangers arising therefrom were apparent; that the plaintiff ought to have comprehended, and did comprehend and appreciate the conditions of said hose and lugging machine and the dangers arising therefrom; that the injuries received by plaintiff were the direct consequence of such conditions and dangers; and that the plaintiff assumed the risk of the injuries then received by him in the mode in which they occurred.

The plaintiff testified in his own behalf as follows: ''I was fourteen years of age the 14th of last December. Previous to coming to Billings, I had had no experience in connection with machinery. I went to Mr. North [a stockholder in the defendant company], and told him that I had heard he wanted a boy at the brickyard to throw the lugging machine in and out of gear, and I asked him if I could get the work to do myself, and he said he didn't know whether I was large enough or

strong enough, but he said I could go down there and try it, and I could go to the yard the next morning if the foreman didn't get a boy, and he said he would notify the foreman. If he hadn't got one, for me to come down and try it, if I was strong enough. I went down the next morning, and the foreman showed me what I had to do. The machine consisted of a lugging machine and a set of cogwheels and the belts up above. I had never seen a machine of that kind before. The basin that the dirt fell in was a sort of a circular thing, something in shape like a bathtub. It had a square end at one end, and the other end was open, except the parts that went down for the blades to fasten on, for mixing the mud and force it out of the machine, where it emptied into the press. In this basin there were the knives that stirred the mud up. The foreman told me that my duty would be to throw the machine in and out of gear when he gave the order for the machine to be stopped, or when any accident happened or something went wrong with the machine; or whenever he told me to stop it I was to throw the machine out of gear, and a little before the machinery was started for three or four days I was to oil the machine and the cogwheels until they ran right at noontime. There was no warning given me, except to keep my hands out of the cogwheels at the back end of the machine, where I was not supposed to be only when I was oiling the machine. There was no warning given me as to the knives at that part of the machine where I was directed to turn the water onto the clay. The water that was turned in there ran through some pipes that were up in the building, and then through the hose they turned the water on a certain force at the nozzle. When I was turning the water on the clay, and in determining its moisture as it was emerging from the press, I was down on my hands and knees at the mouth of the machine. I was down on my hands and knees with my hands in the clay to see how wet it was. I had my left hand on the nozzle. There were some boards running down this side to keep the dirt from falling on the platform, and I was to throw the water on the other side, and I

had my left hand up there to feel of the clay, to see how wet it was, if there was moisture enough in it, with the nozzle in my hand. I went to work on the 13th and was injured on the 16th of August. I was told, in case the clay or dirt got too dry before falling into the press, I was to use the hose and wet the dirt as it fell out of the machine and see if I could get it moist. The hose with which the water was turned into the clay I began to use the day I went to work. The following day the force of the water shoved the nozzle out of the hose, and it fell into the press, and they had to stop the machinery to get the nozzle; and the next morning, the second day, the time-keeper got some bands and put them around the hose, and they did not have any more trouble with it from then until the day I got hurt. The water that come out of the hose was adjusted by turning the stem of the nozzle certain ways. At the time I was injured, I had the nozzle so adjusted that it would allow the required flow through the hose. I was holding the hose in my left hand over the edge of the board, throwing the water in and feeling with my other hand to see if the dirt was moist enough, and the force of the water. The nozzle suddenly opened, and the force of the water jerked the nozzle and my hand into the place where the blade went through and mashed the nozzle and hurt my hand. By saying the nozzle opened I mean it sprung open and let a stronger stream of water through the nozzle. It was my left hand that was injured. I was holding the hose in that hand, and the sudden flow of the water through the nozzle jerked my hand and arm into the machine, and crushed the nozzle through my hand over these knives. There was nothing over the knives at that time to protect and guard them. This happened when the flow of the water burst through the nozzle and jerked my hand over the blade, where the blade had to pass up, and, as it got there, the blade jerked my hand there and the blade got my hand and shoved it into the machine.''

Over the objection of the defendant that the testimony was incompetent, the plaintiff was allowed to testify that two or

three weeks after the accident he went back to the brickyard and a piece of strap iron had been placed over the blades at the end of the lugging machine to keep anyone from getting their hands where the blade was. This testimony was afterward stricken out on motion of plaintiff's attorney, and the jury was told to disregard it. Before it was stricken out, however, the plaintiff testified that, if the same sort of a guard had been on the machine at the time of the accident, his hand would have gone against the outside of the fender, "and would have been protected from going under the blades."

On cross-examination the plaintiff testified: "They had a pipe right over the machine, with a hole in the pipe where the water flowed through and sprinkled and wet the clay as it came into the machine. That was where he [the foreman] directed me to moisten the dirt. He also directed me to moisten the clay at the mouth of the machine, where the clay fell out before it came into the press. When the clay came out of the machine, he told me in case the clay or dirt got too dry to moisten it with the hose at the north end of the machine. On the north side of the machine, on the outside, there were two knives. These knives were of the same fashion as those on the inside, only smaller and not quite so thick. They were about seven-eighths of an inch thick, about three inches wide, and about seven inches long. There were only two there. When these knives were turning around, when the clay was going through the machine, they didn't go very fast, but they went pretty slow. The first day after I went to work there, I put water down in the chute that went down on the brick machine. I could not say how many times. I put water in there a great many times every day, and felt of the clay coming out of the machine. The hose I was using was just a common hose. It was just about the size of a common hose that they use for housework, such as they use for watering lawns—just a common hose. It was plenty long enough to reach to the north end of the machine from that pipe over the machine. I don't know how the nozzle of the hose was broken shortly after I went to work there.

The force of the water shoved the nozzle out of the hose the first day I worked there. It shoved it out, clear out of the hose entirely, and it fell into the press below. By the press I mean the place where they pressed the brick through when the dirt comes out of the machine. The band that the timekeeper put on was one of those bands they have for tightening around a hose. It was a metal band. After the band was put on, we did not have any trouble with the hose. I used it during the second day. It worked all right. When I got my hand hurt, the nozzle opened up, and the force of the water took my hand up into the machine and caught my hand. The full force of the water was not coming through the nozzle before. I could not say how large a stream. I didn't have it quite one-half turned on, just enough to throw the water three or four feet. That was the first day I ever had any trouble while I was working there with the hose for three days, excepting the nozzle falling out of the hose. The only trouble was when the nozzle came out, and the time it jerked my arm. These knives were to cut the dirt when it come out of the machine to kind of trim it off. They did not run through any casting, but there was casting up over the top. I knew that if I got my hands on these knives that went around there that they would get hurt. I knew if I shoved my hand in there it would be hurt. I knew if I put my hand in there it would be hurt. I knew that, if I got my hand in front of that knife, it would be hurt. If I had my hand in there without the nozzle in it, there was wide enough place for it to go through. I knew that those knives cut the clay. If I got my hand in there without the nozzle in my hand, it would not have been hurt. There was wide enough place to put my hand in. There is place enough there for a man's hand to go through without anything in his hand. I did not know when I was down there feeling of that clay and pouring that water out with my left hand that, if my hand got caught in there with the hose in it, it would be hurt. I never even thought of my hand being in there. I knew that if I had the hose in my hand and got my hand in there, it

might be hurt, but I did not know it at that time. I never even thought of it. It was not dark while I was working there. There was a big window there, not right behind me, but off to the side.''

On the part of the defendant two qualified witnesses testified that the so-called pugmill or lugging machine referred to in the complaint and by the plaintiff, was such a machine as is used by brick manufacturers generally, one that has been in constant use in brickmaking plants for over thirty years.

Charles H. Bray, a practical brickmaker, testified: ''I never saw a guard placed over these outer knives. This is a machine which is practically compulsory for any manufacturing company to have that is manufacturing brick by this process, as it is just as necessary to have that machine as it is to have a brick machine itself. This is a machine that is ordinarily used in the clay business, and it is in all the factories making brick by that process. There has been practically no change in it, no improvements made on it at all. As regards these knives that revolve around the end where the clay emerges and dangers incident to the operation of the machine, they are now precisely the same as they were as long ago as I can remember. In some plants the machine is operated by a boy, and in some by a man. The clay is ordinarily moistened in this machine from a water faucet. In the plant with which I am connected the material is shoveled into the machine. In some places it is the custom or usage among men to employ boys to operate these machines, and in some places they don't. I have seen boys operating machines where they are run as this one is here, but, where they do shoveling, you have to have men to do the work.''

Edward J. Shaw testified: ''I am a Northwestern representative with the American Clay Machinery Company of Bucyrus, Ohio. I have followed that business going on thirty years. That company manufactures all kinds of clay-working machinery. I think I am acquainted with the particular pugmill in controversy in this case. I am acquainted with the customs of the business in practically all of the Northwest. I do

not know any instance where this particular pugmill in question was ever made with a guard to protect the outer knives. It is such a machine as is used by brickmakers generally in the territory I have defined. All of the stiff mud and clay plants have a pugmill like the one in question. This is what is known as the approved machine among claymakers.''

The defendant then offered to prove by the last two witnesses that the pugmill in question was not a dangerous machine, and that the defendant had no reason to believe that there was any danger connected with the use of such a machine, and that neither of them ever knew of an accident happening similar to the one involved in this case. The court refused to allow the proof to be made.

Austin North testified: ''I am a stockholder in the Slater Brick Company. At the time the plaintiff was working for that company, the hose was entirely new. There were no defects in the nozzle of the hose nor in the valve. The entire plant was new, and we had been handling it three or four days, possibly five days, getting the plant started. An inch and a quarter pipe conducted the water into the building. The force of the water was medium. I would not be prepared to say how large a pressure we had. If you took a three-quarter inch hose and turned the water on full, wide open, you would be able to throw the water about twenty feet from the nozzle.''

August Bonnet testified: ''My business is that of a construction engineer, building plants all over the country. I was superintendent of the work at the Slater Brick Company's plant when it was put in operation. The plaintiff came to the works, and asked me if he could have some work. I showed the boy what to do. I showed him the machine, and also the lever to throw the machine in and out of gear and where the spray valve was, and the other one at the north end of the mill where the hose was attached, the valve here, and showed him how to handle the nozzle and how to tell with his hand when the clay was dry; not to go near the front, but to keep away from there.

He was shown three or four days, and he got so he could handle
it very successfully. I showed him how to handle the hose. I
told him to turn the water on the brick machine proper after
the clay had left the pugmill, when requested to do so. I sim-
ply told him to turn the hose in it. He could stand right
there without getting down where the hole was. I gave him
that instruction two or three times through the day. Sometimes
we would run an hour or two. Then all at once the clay would
get a little bit stiff in the machine, and then we would want
a little water in the machine. That was the only occasion we
would call for water when the clay was being run through the
machine. I instructed the plaintiff, when feeling the temper
of the clay, to feel of it on top. .He was never told to go there
and feel the clay as it came out of the pugmill before coming
into the brick machine, but to keep away from there. The nozzle
was all right. As to its condition, I don't know as we had any
trouble with the nozzle or hose during the time the boy remained
there in the employ of the Slater Brick Company, unless when
it was leaking. After the clamp had been put on the hose,
the condition of the hose and nozzle during the boy's employ-
ment there was all right. I was present when the plaintiff
was performing the duties which I instructed him in. He was
supposed, when performing his duties, to be one foot from the
north end of the center. He had a nice floor to stand on. Dur-
ing the time that I was there and saw him performing his duties,
he was always standing. I never saw him during the perform-
ance of his duties on his knees. There was no necessity for him
being in that position during the performance of his duties.
It was after the clay had emerged out of the opening and passed
the cutting knives the water was to be turned on them with the
hose, but only when requested. The faucet with the little holes
was supposed to do for the entire machine, and sometimes the
clay would vary, and there would have to be a little water
put in it." Another witness testified that the hose and nozzle
were new.

At the close of the testimony, the defendant moved the court to instruct the jury to render a verdict in favor of the defendant for the following reasons, to wit:

"(1) That there is no evidence tending to prove that the defendant was negligent as alleged in plaintiff's complaint, in that: (a) There is no evidence tending to show that the defendant was negligent in failing to provide the outer knives of said pugmill with a box or guard, but the evidence affirmatively shows that said pugmill was a machine in common use among claymen, and was commonly and generally operated without a guard or box over said outer knives. (b) There is no evidence tending to show that the defendant knew, or ought to have known, of the defect existing in said hose, but it affirmatively appears from the evidence that it had no such knowledge, and, even if the defendant knew of such defect, the injury resulting therefrom was one such as the defendant could and would not have reasonably anticipated. (c) There is no evidence tending to show that the defendant was negligent in failing to warn the plaintiff of any dangers, for the reason that the same were apparent, and it affirmatively appears from the evidence that the plaintiff knew and appreciated, or ought to have known and appreciated, such dangers.

"(2) That the plaintiff assumed the risk of such injury in the mode in which it occurred, for the reason that the dangers arising from said pugmill were apparent, and the plaintiff knew and appreciated, or ought to have known and appreciated, the dangers arising from the operation of such machine, in that the plaintiff has exhibited a thorough knowledge of said pugmill, and testified positively that he knew that, when his hand came in contact with one of said knives, it was liable to be injured; and from the knowledge that plaintiff has exhibited concerning said pugmill the only inference that can be deduced is that plaintiff knew that his hand might come in contact with said knife, and thereby be injured."

This motion was overruled, and afterward the jury returned a verdict in favor of the plaintiff for $5,000 damages. The

court entered judgment upon the verdict, and from this judgment and an order refusing it a new trial, the defendant has appealed to this court.

It has required some research to determine how the questions argued in the briefs and at the bar of this court are raised by the record. No motion for a nonsuit was interposed, and no request was made that the court withdraw from the consideration of the jury any of the alleged grounds of defendant's negligence set forth in the complaint. If there was testimony sufficient to go to the jury on any of these alleged grounds, the motion to direct a verdict was properly denied. Indeed, the appellant itself offered instructions touching all of the alleged acts of negligence, which instructions the court gave. In order, then, to come to a proper consideration of the appeals, we must confine ourselves to the specification of error that the court was wrong in denying defendant's motion for a new trial, and in submitting certain instructions to the jury and refusing others. The two instructions refused, however, do not involve the fundamental questions so ably argued by counsel for both sides.

1. We will begin, then, with the inquiry whether the defendant was negligent in not having the knives boxed or otherwise guarded. It is proper to inquire into this, because we do not know which alleged act of negligence is the basis of this verdict. Perhaps the jury found against the defendant on all three. A motion to exclude the first ground of alleged negligence from the consideration of the jury might properly have been made and sustained, because there was no evidence that the mill could have been operated with guards upon it. In addition to this, the uncontradicted testimony of the defendant shows that the machine in question was the standard make of a reliable manufacturing establishment; that all pugmills are built in the same way with the knives exposed; that this one was appropriate for the work designed to be done by it; and that the same kind of machine had been in constant use in a large area of the country for many years. In the case of *Fritz* v.

*Salt Lake & O. G. & E. L. Co.*, 18 Utah, 493, 500, 56 Pac. 90-92, the supreme court of Utah said: "The rule has become elementary that where the master has furnished the servant with machinery and appliances reasonably safe and suitable, and such as are in general use for carrying on the same kind of business as that in which the master is engaged, and the servant is injured without any fault of the master, the master cannot be held liable because he failed to make use of some attachment or special device that might have rendered the operating of the machine less dangerous, and the accident thereby might have been avoided." The rule as above stated is laid down in the following cases and text-books: *Titus* v. *Bradford R. R. Co.*, 136 Pa. 618, 20 Am. St. Rep. 944, 20 Atl. 517; 5 Thompson's Commentaries, sec. 3993; Bailey on Master's Liability, etc., p. 145; *Gilbert* v. *Guild*, 144 Mass. 601, 12 N. E. 368; *Schroeder* v. *Car Co.*, 56 Mich. 132, 22 N. W. 220; *Nutt* v. *Southern Ry. Co.*, 25 Or. 291, 35 Pac. 653; *Washington & G. R. R. Co.* v. *McDade*, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; *Sappenfield* v. *Main St. & A. P. R. Co.*, 91 Cal. 48, 27 Pac. 500.

The following is taken from the text of 26 Cyc. 1108: "While not conclusive on the question of negligence, evidence is generally admissible in an action for personal injuries to show whether or not the master's machinery, appliances, ways and methods are such as are in ordinary and common use by others in the same business."

In the case at bar the court, at the request of the defendant, advised the jury that, if it was the custom of brickmakers to use pugmills of the kind defendant used without any guard, then no liability could be imposed on the defendant for failure to provide its mill with a guard. If the jury considered this instruction, it must have found for the defendant on that issue, because the defendant proved that it followed the usual and ordinary custom of brickmakers. At any rate, a failure to prove what, if any, precautions could or might have been taken by the defendant to guard the knives, precluded the plaintiff from recovery on that branch of the case. Plaintiff testified that he

afterward saw the machine with a guard over the knives, but he does not say that the mill was in operation at the time, and the testimony was afterward on his motion stricken from the record and taken from the consideration of the jury.

2. The second alleged ground of negligence on the part of the defendant is that the hose "was wholly defective and unfit for use, in that the appliance for controlling the size and force of the stream emerging from the nozzle thereof had become so weak as to slip and allow the full force of the water to suddenly issue from said nozzle, of all of which defects the defendant well knew, or, in the exercise of ordinary care, ought to have known." There is no testimony in the case that would warrant the conclusion that the fact that the nozzle had been forced out of the hose on a day prior to the injury to plaintiff had anything to do with the action of the water on August 16th. Indeed, the plaintiff himself shows that that defect or weakness in the apparatus had no connection with what later occurred. That defect, if it was one, was apparently remedied. Let us bear in mind that no claim is made that the defendant negligently employed a pressure of water that an ordinary hose nozzle could not withstand or control. The testimony shows that the hose and nozzle were new and apparently in good condition. No amount of testing would have apprised the defendant that such an accident as this was likely to happen. Indeed, as is suggested by defendant's counsel, a perusal of the plaintiff's narrative of how it did occur is sufficient to convince us that defendant could not possibly have apprehended the happening of an event which seems to have taken place in opposition to elementary physical laws. The rule applicable to this branch of the case is thus stated in 20 American and English Encyclopedia of Law, 78: "As the master is only bound to use reasonable care in furnishing and maintaining in a safe condition the machinery and appliances, and does not insure the servant against injury, there can be no recovery for injuries sustained from defects in such machinery or appliances unless the master had knowledge thereof, or unless, in the exercise of rea-

sonable care, he should have known thereof.'' Mr. Thompson says (4 Thompson's Commentaries, sec. 3864): ''In an action by an employee against his employer for injuries sustained by the former in the course of his employment from defective appliances, the presumption is that the appliances were not defective; and, when it is shown that they were, then there is a further presumption that the employer had no notice or knowledge of this fact, and was not negligently ignorant of it.'' In this case there is not only no proof that defendant knew, or should have known, of a defect in the nozzle, but there is a total lack of evidence that there was any defect in it. Moreover, if recovery is sought because of a defective nozzle, there is no testimony as to how the accident actually occurred. There is no causal connection between the injury to plaintiff and any condition of the hose or nozzle. No jury could say what it was about the hose or nozzle that caused the accident. In this regard the case falls squarely within the rule laid down by this court in *Howie* v. *California Brewery Co.,* 35 Mont. 264, 88 Pac. 1007; *Olsen* v. *Montana Ore Pur. Co.,* 35 Mont. 400, 89 Pac. 731; *McGowan* v. *Nelson,* 36 Mont. 67, 92 Pac. 40; *McAuley* v. *Casualty Co.,* 37 Mont. 256, 96 Pac. 131. There must be some substantive testimony to justify a jury in returning a verdict for the plaintiff in such cases.

We conclude, therefore, that no verdict should have been based upon the allegation that defendant furnished a defective hose. In this connection, it may be remarked that the court, again at the request of the defendant, also submitted to the jury the question of negligence with regard to a defective hose, as follows: ''You are instructed that no liability of the defendant can be based upon the fact of any defect of the hose or nozzle herein in question, if such you find to be the fact, unless the defendant knew of such defect, or that such defect or defects had existed for such a length of time as that the defendant should have known thereof in the exercise of reasonable care and diligence.'' If the jury heeded this instruction they must

necessarily have found for the defendant on this branch of the case also.

3. Was the defendant guilty of negligence in failing to explain to plaintiff the dangers to be apprehended from the machinery? The first question involved is one of pleading. It is alleged in the complaint that plaintiff was thirteen years of age, wholly *unskilled* in the use of machinery, and that defendant was negligent in not *explaining* to plaintiff the dangers to be apprehended. There is no allegation that plaintiff was not as intelligent as the average boy of his age, and we must conclude, therefore, in the light of his testimony, that he was. There is no allegation that plaintiff was *inexperienced* in the use of such machinery, but, without objection, he testified that he was. No complaint is made of a failure to *warn* the plaintiff, unless that omission be involved in the failure to explain the dangers to him. We dwell upon this question of pleading, not because the appellant urges the same as fatal to a recovery, but because it is necessarily involved in the disposition we make of the appeal.

After carefully reading the testimony, we are convinced that it cannot be claimed that parts of the machine in question were not obviously dangerous, or that plaintiff did not know and understand wherein the danger lay. That is to say, it was apparent that, if a person's hand came in contact with the cogs or the knives while the machine was in motion, injury would probably result. Plaintiff knew this. It was obvious. It was unnecessary to tell this to the boy or explain it to him. He knew all about it. Therefore, it was unnecessary and would have been useless to give him any information on that subject, and no negligence can be predicated upon defendant's failure to do so. (4 Thompson's Commentaries, sec. 4095; *Ciriack* v. *Merchants' Woolen Co.,* 146 Mass. 182, 4 Am. St. Rep. 307, 15 N. E. 579; *Crowley* v. *Pacific Mills,* 148 Mass. 228, 19 N. E. 344; *Williams* v. *Churchill,* 137 Mass. 243, 50 Am. Rep. 304; *Buckley* v. *Gutta Percha & R. Mfg. Co.,* 113 N. Y. 520, 21 N. E. 717; *Silvia* v. *Sagamore Mfg. Co.,* 177 Mass. 476, 59 N. E. 73; *White*

v. *Witteman L. Co.,* 131 N. Y. 631, 30 N. E. 236; *Hettchen* v. *Chipman,* 87 Md. 729, 41 Atl. 65; *Wagner* v. *Plano Mfg. Co.,* 110 Wis. 48, 85 N. W. 643; *Bohn Co.* v. *Erickson,* 55 Fed. 943, 5 C. C. A. 341; *Berlin* v. *William B. Mershon & Co.,* 132 Mich. 183, 93 N. W. 248.)

This brings us to a consideration of the instructions on this feature of the case. The learned trial judge undoubtedly realized that the defendant could not be held liable for failure to point out to plaintiff dangers of which he was fully aware, because the court gave to the jury the following instructions:

"No. 6. It is the duty of one who employs an inexperienced child of tender years to work about dangerous machinery to explain to him the dangers connected with such work, and the manner in which the work should be done, in order to avoid them. The failure to do this is negligence; and, if the child sustains injuries in consequence of such failure, his employer is answerable in damages to him. This duty is one which the master is bound to perform or to have performed, and, if he sees fit to trust the performance of it to someone else, he is accountable for such person's failure to perform it.

"No. 7. I charge you that the duty to instruct the plaintiff as to the dangers surrounding the work which he was directed to do would not be discharged by merely informing him that such work was dangerous, or that a particular part of the machinery at which he was set to work was dangerous. It was the duty of plaintiff's employer, not simply to tell him of the dangers incident to the work, but also to explain to him wherein these dangers lay, and to show him how to do the work in such a way as to avoid them."

There is a line of cases that hold that it may, under certain circumstances, become the duty of employers, not only to warn child employees of danger, but, even in cases where the danger is known and fully understood, to take such precautions and give such instructions as to the manner of doing the work as will enable the child to avoid the danger if the instructions are followed. In the case of *Fries* v. *American Lead Pencil Co.,*

2 Cal. App. 148, 83 Pac. 173, the plaintiff was allowed to recover damages for injuries received by unthinkingly putting his hand against a circular saw, of the danger of touching which he had knowledge. The court said: "It is said that this [plaintiff's own testimony] shows that the child was of sufficient intelligence to be able to comprehend, and did in fact, comprehend, the danger surrounding his occupation, and, there being no evidence to the contrary, no negligence could be imputed to defendant if it did not give plaintiff instructions as to danger. But the decision upon the former appeal lays down the well-known rule that the tender years of plaintiff, his capacity for understanding and appreciating the dangers surrounding his employment were potent factors in determining whether defendant was absolved from the duty of instructing plaintiff as to such dangers and the necessity for caution and care. * * * Had the jury, in the case at bar, before them facts or circumstances sufficient to justify the conclusion that plaintiff did not understand and appreciate the dangers surrounding him? We think they had. Appellant's contention rests upon a literal construction of plaintiff's words. But the jury knew that the child was only nine years old when injured, though thirteen years of age when testifying. His evidence justified the full application of their intuitive knowledge that thoughtlessness is at once the source of happiness and danger to children of that age. His evidence as to knowledge is offset by the absence of judgment and want of appreciation eloquently attested by the fact that notwithstanding his knowledge, and the natural tendency to shrink from pain and injury, he did the very thing which judgment born of reason would prompt him to avoid. After stating his knowledge touching the cutting power of the saw, in the same connection he artlessly said: 'Jack called me, and I went over there, and leaned against the table, and got my hand against the saw, and that is the way my hand got cut.' This is precisely what might be expected of a child of that age whose 'thoughtlessness and carelessness are but other words for absence of judgment.' And this is precisely what the appellant

should have anticipated and guarded against by impressing upon the mind of this mere child the lesson that he must carefully avoid coming in contact with the machinery or saws. This is the very reason the law made it the duty of appellant to give cautionary instructions when this nine-year old boy was employed and placed amid unusual surroundings in a noisy room, full of danger even to adults. The laws of nature constitute an integral part of the evidence in every case, and the jury had a right to view the acts of this child in the light of general and immutable laws governing the conduct, impulses and mental development of children. They had a right to consider every fact and circumstance bearing upon his knowledge and appreciation of dangers surrounding him, and measure his words by the standard of his acts."

In *Foley* v. *California Horseshoe Co.*, 115 Cal. 192, 56 Am. St. Rep. 87, 47 Pac. 44, the court said: "The question of the taking of a risk, the question of the assumption of responsibility in a given act, is determined as much upon the matter of judgment as upon the matter of knowledge. * * * Children are taught obedience. They are taught not to oppose their will and their judgment to those in authority over them; but, in addition to this, and more important than all, the judgment of the child is the last faculty developed. * * * Knowledge he may have, facts he may acquire; but the ability to apply his knowledge or reason upon his facts comes to him later in life. The very accidents of childhood come from thoughtlessness and carelessness which are but other words for absence of judgment. * * * Their conduct is to be judged in accordance with the limited knowledge, experience and judgment which they possess when called upon to act, and it must, from the very nature of the case, be a question of fact for the jury, rather than of law for the court, to say whether or not in the performance of a given task the child duly exercised such judgment, as he possessed, taking into consideration his years, his experience and his ability."

In the case of *Chambers* v. *Woodbury Mfg. Co.,* 106 Md. 496, 68 Atl. 290, 14 L. R. A., n. s., 383, the court employed this language: "What is the law governing the duty of master to child servants of tender years when placed in a dangerous and exposed place or situation? When an employer places a young and inexperienced person at work in an exposed and dangerous situation, he is bound to give him due caution and instruction, and his failure to do so is not excused by the fact that the servant, by the use of his eyesight, might have seen the peril and avoided it. It is the duty of one who employs young persons in his service to take notice of their apparent age and ability, and to use ordinary care to protect them from risks which they cannot properly appreciate, and to which they ought not to be exposed. * * * For this purpose the master must instruct such young servants in their work and warn them against the dangers to which it exposes them, and he must put this warning in such language as to be sure they understand it and appreciate the danger; for it is not enough that he should do his best to make children understand. They must not be exposed to dangers which they do not fully understand in fact. Bearing in mind the natural forgetfulness of youth, he must renew his warning from time to time, as may be reasonable and necessary. And if the servant has not capacity enough to understand the warning and appreciate the danger, or for other reasons does not in fact understand it, the master will be liable for any injury which such servant may suffer in consequence, if continued at such work. * * * We think there can be but one answer, and that is that the appellee was guilty of negligence, because a master must look out for the child, and must see that it is not exposed to danger arising from the structure of building or machinery which an operator of ordinary intelligence and experience would perceive. Notice of danger is not enough. The child must have sufficient instruction to enable him to avoid the danger."

The supreme court of Michigan in *Powers* v. *Harlow,* 53 Mich. 507, 51 Am. Rep. 154, 19 N. W. 257, said: "Children,

wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them must calculate upon this and take precautions accordingly.''

Judge Cooley, in his work on Torts, page 553, says: ''The master may be guilty of actionable negligence in exposing persons to perils in his service, which, though open to observation, they by reason of their youth or inexperience do not fully understand and appreciate, and in consequence of which they are injured.'' And the court in *Chambers* v. *Woodbury Mfg. Co.,* *supra,* also remarked: ''So it may be safely laid down as a rule that those persons who employ children about dangerous places should anticipate that they will exercise only such judgment, discretion and care as is usual among children of the same age under similar circumstances, and are bound to use due care, having regard to their age and inexperience, to protect them from the dangers incident to the situation in which they are placed, and use reasonable precaution in the exercise of such care in their behalf. It is the duty of the employer to so instruct such employees concerning the dangers connected with their employment which from their youth and inexperience they may not appreciate or comprehend, that they may by the exercise of such care as ought reasonably to be expected from them guard and avoid injuries arising therefrom. While employers are not insurers of the lives and limbs of their employees, they do impliedly engage that they will not expose them to the hazard of losing their lives, or suffering great bodily harm, when it is neither reasonable nor necessary to do so. Of course, there can be no negligence where there is no duty that is due, for negligence is the breach of some duty that one person owes to another, and the duty varies with circumstances and with the relation to each other of the individuals concerned, so the alleged negligence varies, and the act complained of never amounts to negligence in law or in fact, if there has been no breach of duty; for, in order to maintain an action for an injury to person or property by reason of negligence or want of

due care, there must be shown to exist some obligation or duty toward the plaintiff which the defendant has left undischarged or unfulfilled. * * * Another inquiry is: To what tribunal, the court or jury, does the law confide the right and duty to determine the question of negligence *vel non* of the master under the circumstances of the case at bar? The answer to this question is that it is the [province of the] jury always, under proper instructions, and never of the court, unless the want of evidence is so clear and obvious that, assuming all the evidence offered by the plaintiff to be true, and adding thereto every inference which may be fairly and legitimately drawn therefrom, it was insufficient to warrant the jury, in the exercise of a reasonable intelligence, to find on the issue in favor of the plaintiff."

In the case of *Ford* v. *Bodcaw Lumber Co.,* 73 Ark. 49, 83 S. W. 346, the court said: "They [the jury] might have reasonably inferred from this instruction that it was the duty of the appellee to instruct Dorns Ford, its employee and an inexperienced minor, only as to 'latent dangers incident to the work' he was employed to do; but this is not correct. It is not the duty of a master to warn an inexperienced servant of the dangers liable to be encountered by him in the performance of his duties where experience and instruction are not necessary to enable him to do with safety the work he is employed or required to perform. If the danger of the employment is patent, and the servant, by reason of his youth and inexperience, does not know or appreciate the danger incident to the service he is employed to do, it would be the duty of the master to warn him of it, and instruct him how to avoid it, so far as it can be, before exposing him to it. In all cases where there is a duty to warn a servant, it would be a breach of such duty to expose him to such dangers without giving him such instructions and caution as would, in the judgment of men of ordinary minds, understanding and prudence, be sufficient to enable him to appreciate the dangers, and the necessity for the exercise of due care and caution, and to do the work safely, so far as it can be done, with proper care on his part. For a breach of this

duty the master is liable for the damages resulting therefrom. Of course, there is no duty to instruct when the master does not, and ought not to know or take notice, of the youth or inexperience of the servant.''

In our judgment the principle of law deducible from the foregoing cases is, that the jury should consider the age, experience or inexperience of the person injured, and all the surrounding circumstances, including the instructions given him, if any, as to what work he should perform and the manner of performing it, together with his knowledge of the dangers, patent or latent, and then determine, as a matter of fact, whether the master knew, or, in the exercise of ordinary care, should have known, that the servant required additional warnings, explanations or precautionary instructions to enable him, if he heeded the same, to avoid the dangers, and should, in the exercise of ordinary care, have instructed him accordingly. Indeed, counsel for the respondent appear to recognize this rule, for they say in their brief: ''We think that the question whether or not the boy should have been warned was purely for the jury to determine.'' Again, Mr. Labatt says: ''Ordinarily, it is within the function of the jury to say whether a minor servant comprehended a work in such a sense as to absolve the employer from the obligation to instruct him. It is only when the proper inference from the testimony is so clear as to be free from doubt that it becomes a matter of law for the court.'' (1 Labatt on Master and Servant, sec. 248.)

''It has been said to be impossible to lay down any inflexible rule applicable alike to all cases where minors are employed as to what warning will be requisite. Much depends upon the nature of the machinery, the age, capacity, intelligence and experience of the employee, as well as the surrounding facts and circumstances. As in the case of adults, the notice given must be such as to enable a person of the servant's youth and inexperience in the business to appreciate intelligently the nature of the danger attending the performance of the work. Notice of danger is not enough. The child must have sufficient instruc-

tion to enable him to avoid the danger. Whether the servant has been adequately instructed is primarily a question for the jury." (Id., sec. 252.) "In numerous cases the servant has been allowed to recover for the reason that the court felt itself unable to say as a matter of law that the master's culpability might not reasonably be inferred from evidence which indicated that the servant, although he had been warned in general terms as to the danger of the work, had received no special warning in regard to the particular danger to which the injury was due, or no explicit instruction as to the proper manner of avoiding it, and that, under the circumstances, the information which the master had thus failed to communicate was necessary to enable the servant to obtain an intelligent comprehension of the danger." (Id., sec. 253.) "The question whether the servant should have been instructed is for the jury, wherever there is evidence tending to show that it was a proper case for such instruction, and different conclusions may reasonably be drawn from that evidence." (Id., sec. 238.)

In the case of *Atlanta & West Point R. R. Co.* v. *Smith,* 94 Ga. 107, 20 S. E. 763, the court said: "The court also charged the jury as follows: 'If you find from the evidence that the plaintiff was a minor when he applied for and obtained the position of train hand, and that he was inexperienced in that service, and the defendant's agent knew it, and if you find that to couple cars was a part of his duty, and that it was attended with danger, the defendant would not have a right to put him at that work without notifying him of the danger and giving instructions as to how to avoid it.' This charge was too strong against the defendant. In *Davis* v. *Augusta Factory,* 92 Ga. 712, 18 S. E. 974, the question of the duty of employers as to giving instructions to minors employed in operating dangerous machinery was to some extent involved, and was very carefully considered. After an examination of numerous authorities, the writer felt authorized to say: 'Without doubt, in some cases even minors are not necessarily entitled to any warning at all as to the character of the machinery about which they

are at work, or as to the proper method of operating it and avoiding obvious dangers. Much depends upon the nature of the machinery, the age, capacity, intelligence, and experience of the employee, as well as all the surrounding facts and circumstances.' Applying the language just quoted to the facts of the case at bar, we think the court should have left it to the jury to determine whether, under all the circumstances, it was incumbent upon the defendant to give to the plaintiff at the time of his employment, or at some time previous to the injury, instructions regarding the dangers of the work and how he could safely perform it." (See, also, 4 Thompson's Commentaries, sec. 4085; *Jones* v. *Florence Min. Co.,* 66 Wis. 268, 57 Am. Rep. 269, 28 N. W. 207; *Marbury Lumber Co.* v. *Westbrook,* 121 Ala. 179, 25 South. 914; *Kochman* v. *Chase,* 32 App. Div. 630, 52 N. Y. Supp. 740.)

In the case of *Manley* v. *Minneapolis Paint Co.,* 76 Minn. 169, 78 N. W. 1050, the court said: "Ordinarily, it is a question of fact for a jury whether the master is negligent in failing to instruct his employee as to the dangers incident to the employment."

In the case of *Ertz* v. *Pierson,* 130 Mich. 160, 89 N. W. 680, it was held: "Where it appears that the plaintiff, though of tender years, knew and appreciated the danger of a machine he was operating, no recovery for personal injuries against his employer can be based upon a failure to warn him of the danger; but whether reasonable care required the owner to give him instructions as to the manner of operating a feed-cutter safely is a question of fact for a jury."

In the case of *Chopin* v. *Badger Paper Co.,* 83 Wis. 192, 53 N. W. 452, it was held that where plaintiff, a boy eighteen years old, was injured by having his hand caught between cogwheels of defendant's paper machine which he was oiling, it was a question for a jury to decide whether, from his previous experience with machinery, plaintiff should have comprehended the risk, so that warning and instruction by defendant was un-

necessary. (See, also, *Renne* v. *United States Leather Co.,* 107
Wis. 305, 83 N. W. 473.)

In the case of *Hanson* v. *Ludlow Mfg. Co.,* 162 Mass. 187, 38
N. E. 363, the court said: ''While he [a boy of seventeen] could
not contend that he did not know that his hand would be in-
jured by contact with the saw, nor that he was engaged in a
work that he did not know was more than ordinarily danger-
ous, there was room for the jury to find that he did not volun-
tarily place his hand upon the saw, and that he was ignorant,
and in the exercise of due care and forethought might not have
known that the log, if it hit the saw, might carry his hand upon
it. If the case had been left to the jury, they might perhaps
have well found from all the evidence that, notwithstanding
his denial, he did know of the action of the saw upon objects
touching it in the rear, or that, in the exercise of reasonable
diligence, he should have known it. But it cannot be said that
there was no other reasonable inference from the evidence, and
it was a question for the jury whether the defendant ought to
have warned him of his danger.'' (See, also, *Boyer* v. *North-
ern Pac. Coal Co.,* 27 Wash. 707, 168 Pac. 348; *Jarvis* v. *Coes
Wrench Co.,* 177 Mass. 170, 58 N. E. 587; *King* v. *Ford River
Lumber Co.,* 93 Mich. 172, 53 N. W. 10; *Mansfield* v. *Eagle Box
& M. Co.,* 136 Cal. 622, 69 Pac. 425; *Barg* v. *Bousfield,* 65 Minn.
355, 68 N. W. 45; *Allen* v. *Jakel,* 115 Mich. 484, 73 N. W. 555.)

In the case at bar the court instructed the jury that it was
the duty of the defendant ''to explain to plaintiff wherein the
dangers lay, and to show him how to do the work in such a way
as to avoid them.'' It is, of course, true that, where instruc-
tions are necessary, it is the duty of the defendant, if he knows
or should have known of the necessity, to give them. But
whether such duty devolved upon the defendant in this par-
ticular case was a question for the jury to decide, under proper
instructions; not the court. This exact point is not made by
the appellant, but it seems to arise upon its contention that there
is no evidence to justify the jury in finding a verdict for the
plaintiff based upon failure to explain to him the extent of the

danger. At any rate, as there must be a retrial, the point should be decided.

Adverting again to the question of pleading, which it will be seen from the foregoing is necessarily involved in a consideration of the last point decided, it is again suggested, as it was in the case of *Gates* v. *Northern Pac. Ry. Co.*, 37 Mont. 103, 94 Pac. 751, that, if it is incumbent upon the plaintiff to prove, not only his age, but also the necessity for explanations and instructions as to how to avoid the danger, it would seem to follow that he must in his complaint make allegations sufficient to form a basis for such evidence.

But counsel for appellant tell us that we are not permitted to enter upon the inquiry whether the additional duty we have been discussing rested upon the defendant, for two reasons. First. Because there is no averment of negligence in failing to give such instructions as would have enabled plaintiff to avoid the injury. As heretofore indicated, we regard this point as well taken. Second. Because there is no causal connection between the failure to instruct and the injury suffered by respondent. In this connection they argue: "Neither the explanation nor the warning would have prevented the injury. It was due, under the testimony, to a wholly fortuitous circumstance—the sudden rush of water through the nozzle—by reason of which the hand of the respondent was carried against the knife. If the testimony had been that in a moment of heedlessness, thoughtlessness or forgetfulness he had voluntarily got his hand within the region traversed by the knives, a warning might have been of some avail, might have served to keep constantly in his consciousness the peril. But that is not the case. He had, apparently, been sufficiently cautious, and it was only when the force, coming too suddenly to be resisted, carried his hand into the region where it was engaged, that it was injured. It was the sudden rush of the water that was the proximate cause of his injury, not the want of any warning or explanation that the knives would crush and cut his hand if they caught it." But this position is not well taken, for the reason that the boy,

according to his testimony, was instructed to water and feel of the clay as it emerged from the mill. He was obeying orders, and it was for the jury to determine whether the defendant was chargeable with a want of ordinary care in not apprehending that he would probably attempt to do both acts at the same time and not instructing him accordingly. To us it seems reasonable to suppose that a boy of that age would act just as this boy says he did; that is, feel of the clay during the process of moistening the same, so as to determine when he had used water enough.

As the case must be remanded for a new trial, we deem it proper to say in this connection that if the plaintiff was injured because of a failure on the part of the defendant to use reasonable care to give him such instructions as would enable him to avoid the danger surrounding him, and the defendant was chargeable with knowledge that such instructions were required, it would not be material to ascertain the exact reason why the plaintiff's hand came in contact with the knife, provided he was in the discharge of his duties at the time, and did not intentionally and knowingly place that member where he knew it would be injured.

The court gave to the jury instruction numbered 4, as follows: "In this case it is charged that the defendant was at fault in three respects: First, in setting the plaintiff at the work at which he was engaged when injured without explaining the dangers to be apprehended; second, in allowing the revolving knives to be and remain unboxed and unguarded; and, third, in furnishing him with a defective hose. It is not necessary for the plaintiff to prove all of these charges in order to recover. If you believe from the evidence that the work which the plaintiff was directed to do was attended with danger from the knives and that he was injured by these knives, and that this danger was not explained or apparent to him, and that he did not understand or appreciate it, and that he exercised the degree of care in doing the work which the ordinary person of his years and experience and intelligence would have exercised

in doing it, then he is entitled to recover in this action, even though the hose was in perfect condition, and even though it was proper to allow the knives to be unboxed and unguarded." Appellant complains of this instruction because, as counsel say, it permits a recovery, though none of the acts mentioned in it was the proximate cause of the injury. We think this objection is well taken.

Again, complaint is made that the court erred in excluding from the jury the testimony of two witnesses familiar with the business of brickmaking, who were prepared to testify that in the course of their experience they never heard of an accident happening as this one is alleged to have happened. In the case of *T. & H. Pueblo B. Co. v. Klein,* 5 Colo. App. 348, 38 Pac. 608, the court of appeals of Colorado said: "Where the proper construction or safe condition of machinery is in issue, evidence that it has always satisfactorily answered the purpose for which it was intended is competent as raising a strong presumption that it was properly constructed, and could be used with safety. It would also tend to repel any implication of negligence on the part of the owner in using improper machinery, because its continued operation for a long time with uniformly good results would be evidence of its freedom from danger, as convincing as any he could have." But in the case we are considering the dangers connected with the machine were patent, the happening of the accident as narrated by the plaintiff was a wholly fortuitous event, the occurring of which in the exact manner told by the boy could not be anticipated. Consequently the testimony offered would not have aided the jury in arriving at a verdict. It is manifest to anyone that injury could, and probably would, result from contact with the revolving knives. What light, then, would have been shed upon the inquiry by any amount of testimony that no accident of the kind had ever before happened? And, so far as the nozzle was concerned, the testimony of the plaintiff is to the effect that the flow of water was accelerated without any apparent reason therefor. The testimony rejected would not have enlightened the jury any on the

subject, either as affecting the event itself or the defendant's responsibility in the matter.

It is believed that this disposition of the basic questions involved in these appeals makes it unnecessary to canvass the minor errors complained of.

The judgment and order of the district court of Yellowstone county are reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.